358 F.3d 1097
 Ronald Ray SMITH, Plaintiff, and
Disabled Rights Action Committee, a Utah non-profit corporation, Plaintiff-Appellant,
v.
PACIFIC PROPERTIES AND DEVELOPMENT CORPORATION, a Nevada corporation, Defendant-Appellee.
 No. 03-15656.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 5, 2003 — San Francisco, California.
 Filed January 26, 2004.
 
 COPYRIGHT MATERIAL OMITTED Richard F. Armknecht, Armknecht & Cowdell, Lindon, Utah, for Plaintiff-Appellant Disabled Rights Action Committee.
 Glenn F. Meier, Howard, Meier & Fine, Kolesar & Leatham, Las Vegas, Nevada, for Defendant-Appellee.
 Appeal from the United States District Court for the District of Nevada Lloyd D. George, District Judge, Presiding. D.C. No. CV-01-01277-LDG.
 Before: MICHAEL DALY HAWKINS, RICHARD A. PAEZ, and MARSHA S. BERZON, Circuit Judges.
 Opinion by Judge Hawkins
 OPINION
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 1
 In a case of first impression, we must decide whether a disabled person seeking to enforce rights created by § 3604(f)(2) of the Fair Housing Amendments Act ("FHAA"), Pub.L. No. 100-430, 102 Stat. 1619 (codified as amended at 42 U.S.C. §§ 3601-3619, 3631 (1988)), must have an interest in actually purchasing or renting a particular property or dwelling in order to allege a discriminatory violation. See 42 U.S.C. § 3604 (1988). We also face a related question: whether Plaintiff-Appellant Disabled Rights Action Committee ("DRAC") may have organizational standing to allege FHAA violations based on its own articulated "injury in fact." Because we answer the first question in the negative and the second in the affirmative, we reverse the district court's dismissal for failure to state a claim and denial of motion to reconsider, and remand for further proceedings. We do, however, agree with the district court that disgorgement, one of the remedies sought by Appellant, is inappropriate in any case and therefore also affirm in part.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 The nature of the district court's dismissal requires us to accept as true the factual allegations of DRAC's complaint and to construe those facts in the light most favorable to the plaintiff. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir.1998).
 
 
 3
 In late 1997 and early 1998, Robert Ray Smith, a wheelchair-bound polio victim, began investigating multi-family housing developments in Clark County, Nevada, as part of a program to test compliance with the FHAA.[1] The tester program of which Smith was a part was organized and implemented by DRAC, a non-profit organization promoting the rights of disabled persons in Utah and Nevada. As a result of his investigations, Smith discovered discriminatory design and construction defects in four properties designed and built by Defendant-Appellee Pacific Properties Development Corporation ("Pacific Properties").[2] These defects included, inter alia, inaccessible interior doorways, pathways and thermostats.
 
 
 4
 Based on these discoveries, Smith and DRAC filed administrative complaints with the United States Department of Housing and Urban Development ("HUD"). HUD conducted its own investigation, confirmed the existence of apparent FHAA violations and instituted compliance litigation resulting in a consent decree with Pacific Properties. Under the decree, Pacific agreed to make certain adjustments to the four housing developments in accordance with an injunction prohibiting discrimination on the basis of disability in violation of 42 U.S.C. § 3604(f)(3)(C). Uninformed of the terms of the consent decree, Smith visited another Pacific development, Savannah at Silverado Ranch, after the decree was entered and again encountered "various architectural barriers in the common areas."
 
 
 5
 Dissatisfied with a lack of notice of the entry of the decree as well as its scope and reach, Smith and DRAC initiated the instant litigation in district court, claiming that conditions in all five Pacific Properties developments violated § 3604(f)(2)'s prohibition of discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of — [inter alios] that person."[3]
 
 
 6
 On motion of Pacific Properties, the district court dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, determining that neither a tester in Smith's circumstance nor an organization like DRAC had standing to assert rights under the FHAA.[4] DRAC subsequently moved for reconsideration under Fed.R.Civ.P. 59(e). In that motion, DRAC alerted the court that Smith had passed away, and asked that the court reconsider its motion to amend the complaint to include supplemental facts in support of its own representational and organizational standing in light of Smith's death.
 
 
 7
 The district court denied DRAC's reconsideration motion without articulating the basis for denial. DRAC appeals both the dismissal and the denial of the motion for reconsideration. We have jurisdiction over both orders under 28 U.S.C. § 1291 because the post-judgment denial of reconsideration is an "integral part" of the final judgment on the merits, even though not entered concurrently with that judgment. See United States v. One 1986 Ford Pickup, 56 F.3d 1181, 1184-85 (9th Cir.1995) (per curiam).
 
 STANDARD OF REVIEW
 
 8
 We review the denial of a motion for reconsideration for abuse of discretion, Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir.2000). The same standard of review applies to denial of leave to amend. Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir.2002). Whether such a denial rests on an inaccurate view of the law and is therefore an abuse of discretion, see United States v. State of Washington, 98 F.3d 1159, 1163 (9th Cir.1996), requires us to review the underlying legal determination de novo. See Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir.2003) (en banc) (per curiam).
 
 
 9
 Because it is the only facially viable basis for denial of DRAC's motion to reconsider, we assume that denial was premised on the futility of amendment in light of the district court's legal ruling on the scope of § 3604(f)(2).[5] As the Supreme Court has explained: In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."
 
 
 10
 Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). There is no allegation or evidence of delay, bad faith, or prejudice in the record. Because DRAC alleges on appeal that the court's legal ruling buttressing the denial of amendment was in error, we review de novo the district court's determination that § 3604(f)(2) of the FHAA requires that a disabled person have an interest in actually renting or purchasing a dwelling in order to allege a violation. See Southwest Voter Registration Educ. Project, 344 F.3d at 918.
 
 
 11
 With regard to the dispute over DRAC's standing separate and apart from any tester injury, we review de novo the district court's conclusion that DRAC lacked organizational standing to bring the instant litigation. See Fair Housing of Marin v. Combs, 285 F.3d 899, 902 (9th Cir.2002), cert. denied, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002).
 
 DISCUSSION
 
 12
 DRAC has asserted two bases for its standing. First, it claims standing as a representative of its members, see Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), including testers like Smith, who were allegedly subjected to limited housing opportunities and overtly discriminatory conditions stemming from Pacific Properties' failure to comply with the law. Second, DRAC claims organizational standing in its own right, alleging that Pacific Properties' discriminatory practices negatively impacted its organizational mission and caused DRAC to redirect scarce resources to combat discrimination by Pacific Properties. See, e.g., Fair Housing of Marin, 285 F.3d at 905. While DRAC's representational standing is contingent upon the standing of its members to bring suit, see Hunt, 432 U.S. at 343, 97 S.Ct. 2434, DRAC's organizational standing is separate from the standing of its members, turning instead on whether the organization itself has suffered an injury in fact. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). We address each of these bases for DRAC's standing separately below.
 
 A. Representational Standing
 
 13
 To establish representational standing, DRAC must demonstrate that:
 
 
 14
 (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to vindicate are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 15
 Hunt, 432 U.S. at 343, 97 S.Ct. 2434. The district court determined that DRAC lacked representational standing because it could not demonstrate that any one of its members, including the tester Smith, had standing to sue.
 
 
 16
 DRAC concedes that none of its members have any interest in actually purchasing or renting property from Pacific Properties. It contends, nonetheless, that § 3604(f)(2), like other provisions of the FHAA and the original Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq. (1968), creates a broad right to be free from discrimination that may be enforced by disabled persons (or those acting for them) even if they are "testers," i.e., someone having no interest in actually buying or renting that poses as buyer or renter to collect evidence of unlawful housing practices. See Havens, 455 U.S. at 373, 102 S.Ct. 1114. The district court disagreed, finding that § 3604(f)(2) "does not create a broad right to the opportunity to buy or rent a dwelling that is unconnected to any interest in actually renting or buying a dwelling."
 
 
 17
 Testers have played a long and important role in fair housing enforcement, stemming from the Supreme Court's two-decade-old determination that with the FHA, Congress intended to establish a broad set of rights to be free from housing discrimination, and that as a general rule, courts should not erect standing barriers — other than the minima required by Article III — to those seeking to vindicate these rights. See Havens, 455 U.S. at 372-73, 102 S.Ct. 1114; see also Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 103, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The high court more recently cautioned that courts be no less generous in interpreting provisions added to the FHA by the FHAA. See City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995).
 
 
 18
 We begin our analysis with the various enforcement provisions of the FHA and FHAA. The citizen suit provision of the FHA permits enforcement by "any person... who claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i)(1). Broad construction of the "any person" language was subsequently extended to 42 U.S.C. § 3604(d)[6] of the FHA by the Supreme Court in Havens. 455 U.S. at 373, 102 S.Ct. 1114. The Court concluded that § 3604(d) confers on "all `persons' a legal right to truthful information about available housing." Id. In reaching this end, the Court contrasted the language of 42 U.S.C. § 3604(a), which prohibits the refusal to sell or rent in the face of a "bona fide offer" because of race, color, religion, and so on, with that of 42 U.S.C. § 3604(d), which more broadly prohibits misrepresentation to "any person" for the same reasons. 455 U.S. at 374, 102 S.Ct. 1114. Because Congress "plainly omitted any such requirement[of a bona fide offer] insofar as it banned discriminatory representations in [3604(d)]," that a tester "may have approached the real estate agent ... without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [3604(d)]." Id. When Congress enacted the 1988 amendments to the FHA, it spoke in even broader terms, changing the language of § 3604(d) by making it unlawful for the first time: "To represent to any person because of ... handicap ... that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." 42 U.S.C. § 3604(d) (1988), amending 42 U.S.C. § 3604(d) (1968). Congress also added 42 U.S.C. § 3604(f), a section dealing specifically with discrimination based on handicap. Under the Court's broad holding in Havens, testers began to and still most often do bring suit under § 3604(d), specifically because that section has been held not to require an actual intention to rent or buy the property in question. The issue of whether the Court's interpretation in Havens extends to § 3604(f)(2) is an issue of first impression. We therefore look at how other provisions of the FHA and FHAA have been interpreted in determining the answer.
 
 
 19
 The language of § 3604(f)(2) replicates that of its predecessor, 42 U.S.C. § 3604(b);[7] it is simply directed specifically to discrimination based on handicap, rather than race, color, religion, sex, familial status or national origin. The Seventh Circuit has determined that § 3604(b) of the FHA is violated, even in the absence of an actual intention to rent or buy a property, when a landlord offers black testers apartments at higher rental rates than those offered to white testers. See United States v. Balistrieri, 981 F.2d 916, 929 (7th Cir.1992). This is because § 3604(b), like § 3604(d), prohibits discrimination against "any person" in the terms or conditions of rentals. See Balistrieri, 981 F.2d at 929; see also Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1527 (7th Cir.1990) ("[T]he logic of Havens embraces discrimination in the provision of services, forbidden explicitly by section 3604(b) and implicitly by section 3604(a).").
 
 
 20
 Pacific Properties argues that § 3604(b) is not relevant to the instant inquiry, because that section specifically excludes discrimination based on disability — that racial, gender, or other enumerated tester groups may have standing under § 3604(b) is inapposite because disabled testers are different from those seeking to redress discrimination against other protected classes. Disabled testers, Pacific argues, have no need to undertake investigations to determine whether the terms and conditions of sale or rental create barriers to accessibility, because such violations would be readily apparent to anyone attempting to rent or buy. Pacific concludes that Congress recognized this difference when it created a special section for disability discrimination with § 3604(f)(2).
 
 
 21
 But the plain statutory language of § 3604(f)(2) both replicates that of § 3604(b), and adds additional classes of individuals who may seek to enforce rights under the provision based on either their own disability or that of another. 42 U.S.C. § 3604(f)(2)(A)-(C), supra n. 3. We refuse to accept the notion that Congress could somehow have intended different standing requirements for identical provisions. This is particularly true when one looks to § 3604(f)(2)'s sister provision, § 3604(f)(1), a more narrow provision that tracks the language of § 3604(a), limiting the class of affected individuals to "any buyer or renter,"[8] just as § 3604(a) is limited to "any person" making "a bona fide offer" to sell or rent.
 
 
 22
 It is also significant that while § 3604(f)(1) explicitly prohibits discrimination "in the sale or rental, or to otherwise make unavailable or deny, a dwelling ... because of a handicap," § 3604(f)(2) prohibits a broader set of behavior, making it illegal to even discriminate "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap...." 42 U.S.C. § 3604(f)(1), (2). The logical conclusion is that the group of individuals that could fall victim to the latter class of broader and less specific behaviors would be, a fortiori, larger and less specific than the enumerated class of renters and buyers affected by the former prohibition.
 
 
 23
 Moreover, the district court noted that "while a `tester' may have standing under § 3604(f)(2), the language of § 3604(f)(2) makes plain that the injury to the tester must arise from something more than merely observing a discriminatory architectural feature." The court therefore apparently recognized the possibility of disabled tester standing under this section but simply attempted to distinguish the facts of this case based on what that tester must accomplish in order to gain standing. To read an additional standing requirement into the statute beyond mere observation, however, ignores that many overtly discriminatory conditions, for example, lack of a ramped entryway, prohibit a disabled individual from forming the requisite intent or actual interest in renting or buying for the very reason that architectural barriers prevent them from viewing the whole property in the first instance. More importantly, the district court's reasoning fails to recognize the dignitary harm to a disabled person of observing such overtly discriminatory conditions.
 
 
 24
 Interpreting § 3604(f)(2) to exclude these individuals from enforcing their right to be free from discrimination undermines the specific intent of the FHAA, which is to prevent disabled individuals from feeling as if they are second-class citizens. See generally, H.R. REP. 100-711, at 17-18 (1988). The district court therefore erred as a matter of law in interpreting § 3604(f)(2) to preclude tester standing, and as a consequence, DRAC's representational standing. The district court's subsequent denial of leave to amend or reconsider based on this interpretation was an abuse of discretion.[9] See Washington, 98 F.3d at 1163.
 
 B. Organizational Standing
 
 25
 On the merits of the motion to dismiss, the district court also committed legal error when it determined that DRAC, as an organization, did not have standing "separate and apart" from Smith under § 3604(f)(2). We need look no further than the statute itself, our recent decision in Fair Housing of Marin v. Combs, and the face of DRAC's complaint to discover where that error lies. Section 3602(d) of the FHA defines "person" to include "corporations" and "associations." 42 U.S.C. § 3602(d) (1988). As a threshold matter, DRAC, a non-profit corporation, is a "person" protected by the statute. See Havens, 455 U.S. at 378-79 & n. 19, 102 S.Ct. 1114; Walker v. City of Lakewood, 272 F.3d 1114, 1123, n. 1 (9th Cir.2001). DRAC must therefore satisfy the requirement for individual standing: a demonstration of concrete and particularized injury giving DRAC "a personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); see also Havens, 455 U.S. at 378-79, 102 S.Ct. 1114; Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
 
 
 26
 In addition to interpreting § 3604(d) for purposes of tester standing, Havens analyzed the independent standing of Housing Opportunities Made Equal, or HOME, an organization which, like DRAC, utilized testers. Based on HOME's complaint, which alleged that its efforts "to assist equal access to housing" had been "frustrated" by defendants' practices and that it had devoted "significant resources to identify and counteract" those practices, the Court found that HOME had sufficiently alleged injury for standing in its own right. 455 U.S. at 379, 102 S.Ct. 1114. "Such concrete and demonstrable injury to the organization's activities — with the consequent drain on the organization's resources — constitutes far more than simply a setback to the organization's abstract social interests." Id. (citing Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)).
 
 
 27
 In Fair Housing, we interpreted Havens to stand for the proposition that an organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular housing discrimination in question. Fair Housing, 285 F.3d at 905; see also Lakewood, 272 F.3d at 1124. Fair Housing avoided the question whether the expense of litigation alone is enough to constitute a "diversion of resources" under this test, 285 F.3d at 905, but the court had previously indicated that such an allegation is generally insufficient. Lakewood, 272 F.3d at 1124, n. 3. At the 12(b)(6) stage of litigation, we must look to the general allegations contained in the complaint to determine whether DRAC has met its burden of proof. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
 
 
 28
 On the face of its complaint, DRAC alleged that it is a non profit corporation "organized with the principal purpose of helping to eliminate discrimination against individuals with disabilities by ensuring compliance with laws intended to provide access to housing, public buildings, transportation, goods and services.... Part and parcel to this effort is ensuring an adequate stock of accessible housing for those who are freed to leave the nursing homes." Any violation of the FHAA would therefore constitute a "frustration of[DRAC's] mission." Fair Housing, 285 F.3d at 905. The complaint pled with particularity two causes of action for violations of the FHAA at five Pacific Properties developments.
 
 
 29
 With regard to diversion of resources, DRAC specifically stated in its complaint that "in order to monitor the violations and educate the public regarding the discrimination at issue, DRAC has had (and, until the discrimination is corrected, will continue) to divert its scarce resources from other efforts to promote awareness of — and compliance with — federal and state accessibility laws and to benefit the disabled community in other ways (for example, DRAC's efforts to free disabled persons from nursing homes.)[.]" Bearing in mind that DRAC's claim was dismissed without leave to amend,[10] we believe these allegations are enough to constitute a showing of a "diversion of resources" and to survive a 12(b)(6) motion; at this point in the litigation, we presume that "general allegations embrace those specific facts that are necessary to support a claim." See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Because the district court gave no explanation for its finding that DRAC failed to allege organizational standing other than to say that "DRAC has not shown that it has standing separate and apart from Smith," we accordingly reverse with regard to this finding on a de novo review of this court's own law. We also believe that the district court abused its discretion in denying DRAC leave to amend its complaint with regard to organizational standing prior to dismissal. See Eminence Capital LLC, 316 F.3d at 1052, supra n. 10. The court's denial was particularly egregious in light of the fact that DRAC had indicated, in good faith, that it was willing and able to establish with greater specificity the diversion of its own resources from non-litigation activities as a result of Pacific Properties' discrimination. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) ("a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts.") (citation and internal quotation marks omitted).
 
 C. Disgorgement
 
 30
 DRAC's third argument on appeal looks beyond the threshold question of standing, focusing instead on the proper remedy for its claim should it succeed on the merits. In its initial complaint, DRAC claimed and sought remedy for "disgorgement of unjust enrichment," alleging that Pacific Properties' "failure to promptly retrofit inaccessible dwellings ... to conform with federal civil rights law ... has conferred (and continues to confer) an economic benefit (whether direct or indirect) to Defendant." The district court dismissed this claim and remedy, noting a dearth of case law supporting the proposition that a non-governmental plaintiff may properly seek to disgorge an entity with whom they are not in privity. We agree.
 
 
 31
 As Pacific Properties correctly notes, outside of the securities litigation context, the remedy of disgorgement only arises where a prior relationship between the parties subject to and benefitting from disgorgement originally resulted in unjust enrichment. See e.g., Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 291-92, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) (wages withheld in violation of Fair Labor Standards Act disgorged from employer and reimbursed to employee); Porter v. Warner Holding Co., 328 U.S. 395, 397-99, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (rent increases in violation of Emergency Price Control Act of 1942 disgorged from landlord and refunded to tenants). As DRAC concedes, no relationship pre-existed the instant litigation allowing DRAC to be viewed as the rightful recipient of whatever funds could be disgorged from Pacific Properties. We therefore affirm the district court's dismissal of this claim and remedy.
 
 CONCLUSION
 
 32
 The history and language of the FHA and the FHAA make clear that testers fall within the protected group of "any person[s]" that may enforce rights created by § 3604(f)(2) when they are violated by discriminatory housing conditions. The district court's denial of reconsideration and leave to amend based on a contrary determination was therefore an abuse of discretion. DRAC has also made a sufficient showing to support its claim of organizational standing. As to these issues, the judgment of the district court is reversed and the matter remanded for further proceedings consistent with this opinion. With regard to the remedy of disgorgement, we agree that dismissal was appropriate. The judgment of the district court is
 
 
 33
 REVERSED in part, AFFIRMED in part and REMANDED. Costs on appeal to Plaintiff-Appellant.
 
 
 
 Notes:
 
 
 [1]
 Mr. Smith has since passed away and, as a result, is not a party to this appeal. The Disabled Rights Action Committee remains as the only named plaintiff
 
 
 [2]
 Smith allegedly encountered discrimination at the following Pacific Properties Developments: Pacific Adagio ("Adagio"), Pacific Carlisle ("Carlisle"), Pacific Deerfield ("Deerfield"), Pacific Legends East ("Legends East")
 
 
 [3]
 Title 42. The Public Health and Welfare
 § 3604. Discrimination in the sale or rental of housing and other prohibited practices As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful —
 (f)(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of —
 (A) that person; or
 (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
 (C) any person associated with that person.
 
 
 [4]
 The dismissal was without leave to amend, despite DRAC's request to amend in its Opposition to the Motion to Dismiss
 
 
 [5]
 The district court did not include its reasons for denying the motion to reconsider in its order, but DRAC conceded in its motion that if the court was bound by its legal determination in regard to tester rights under § 3604(f)(2), then its request to amend its allegation of representational standing would be futile:
 Plaintiffs concede, of course, that if the Court adheres to it's [sic] narrow construction of 42 U.S.C. § 3604(f)(2)(i.e. that "merely" observing discriminatory architectural features does not constitute being subjected to discrimination in the terms, conditions, or privileges of sale or rental), then such amendment would be futile as regards DRAC's other members (who are injured in the manner that Mr. Smith was injured — i.e., by being subjected to discriminatory conditions of sale or rental at properties that they do not live at and where they have no interest in living) and as regards DRAC's representational standing (which is "piggyback" to its members' standing).
 
 
 [6]
 Title 42. The Public Health and Welfare
 § 3604. Discrimination in the sale or rental of housing and other prohibited practices As made applicable by section 803 and except as exempted by sections 803(b) and 807, it shall be unlawful —
 (d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.
 amended by 42 U.S.C. 3604(d) (1988).
 
 
 [7]
 Title 42. The Public Health and Welfare
 § 3604. Discrimination in the sale or rental of housing and other prohibited practices As made applicable by section 803 and except as exempted by sections 803(b) and 807, it shall be unlawful —
 (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin.
 amended by 42 U.S.C. 3604(b) (1988).
 
 
 [8]
 Title 42. The Public Health and Welfare
 § 3604. Discrimination in the sale or rental of housing and other prohibited practices As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful —
 (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of —
 (A) that buyer or renter,
 (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
 (C) any person associated with that buyer or renter.
 
 
 [9]
 In light of Smith's death, on remand, DRAC should be allowed to amend its complaint with regard to representational standing in accordance with this opinion
 
 
 [10]
 The district court does not explain why it refused to allow DRAC to amend its complaint despite repeated requests. "A simple denial of leave to amend without any explanation by the district court is subject to reversal. Such a judgment is `not an exercise of discretion; it is merely an abuse [ ] of discretion....'"Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.2003), quoting Foman, 371 U.S. at 182, 83 S.Ct. 227. DRAC has indicated that it would be capable of amending its complaint upon remand to clearly come within the Fair Housing requirements on the merits of the standing inquiry.