OPINION
GILMAN, Senior Circuit Judge:
Plaintiff-Appellant A Society Without a Name, For People Without A Home Millennium Future-Present (ASWAN) is an unincorporated association made up of homeless and formerly homeless people that advocates for their rights. On February 17, 2009, ASWAN sued defendantsappellees Commonwealth of Virginia, doing business as Virginia Commonwealth University (VCU), City of Richmond (City), Homeward, a Virginia nonprofit corporation, and unidentified John Doe(s). It alleged that the defendants had conspired to establish the Conrad Center on Oliver Hill Way, a site removed from Richmond’s downtown community, for the purpose of reducing the presence of the homeless population in the downtown area by providing services for them in a remote *345 location. The Conrad Center began operating on February 5, 2007.
ASWAN claimed that the relocation of homeless services to the Conrad Center violated 42 U.S.C. §§ 1983 and 1985(3), the Americans with Disabilities Act (ADA), the Equal Protection Clause of the Fourteenth Amendment, and the Fair Housing Act (FHA). The district court dismissed all of ASWAN’S claims either because they failed to state a claim upon which relief can be granted or because they were barred by the applicable statute of limitations. For the reasons set forth below, we affirm.
I. Background
ASWAN filed suit in Virginia state court, but Homeward removed the action to federal court in accordance with 28 U.S.C. §§ 1441 and 1446. In its second amended complaint, ASWAN alleged that the Conrad Center is located about two miles from downtown Richmond; that this location is isolated and removed from Richmond’s downtown community and VCU’s campus; that the defendants took various actions to pressure organizations that provided services to the homeless in the downtown area, such as the Daily Planet, to relocate to the Conrad Center; that the defendants took these actions to make the homeless’ less visible to, and segregate them from, Richmond’s downtown community and the VCU campus; that creating the Conrad Center on Oliver Hill Way makes it difficult for homeless people to travel between the Center and the downtown area, an area that includes open spaces such as Monroe Park located near VCU’s campus; and that the efforts to make the homeless less visible have their roots in class, race, and disability prejudice. ASWAN contends there is a strong link between homelessness and disability, asserting that the public generally perceives and regards homeless people as being disabled due to mental illness, alcoholism, and substance abuse.
In addition to claiming that the defendants’ actions violated the ADA, the FHA, and 42 U.S.C. § 1985(3), ASWAN asserted that VCU retaliated against it in violation of the ADA for bringing this suit by withdrawing VCU’s earlier promise to help pay the cost of transporting homeless people to and from the Conrad Center. ASWAN separately alleged that the City violated the Equal Protection Clause and 42 U.S.C. § 1983.
In response to ASWAN’S complaint, all of the defendants filed motions to dismiss, arguing, among other things, that ASWAN’S complaint failed to state a claim upon which relief can be granted and/or that the claims were barred by the applicable statute of limitations'. The magistrate judge assigned to the case recommended that the motions be granted for the following reasons:
• ASWAN’S conspiracy claim under 42 U.S.C. § 1985(3) should be dismissed “because it is comprised of conclusory allegations unsupported by concrete facts” and therefore fails to state a plausible conspiracy claim.
• ASWAN’S ADA, FHA, equal-protection, and § 1983 claims should be dismissed because they fall outside the applicable statute of limitations.
• ASWAN’S claim that VCU retaliated against ASWAN for bringing this suit in violation of the ADA should be dismissed because (1) ASWAN failed to allege the necessary elements of a retaliation claim, and (2) VCU was not obligated to help pay the cost of transporting homeless people to and from the Conrad Center, so VCU’s withdrawal of its earlier promise to help pay these transportation costs, which occurred after ASWAN filed suit, does *346 not amount to a discriminatory act or an adverse action.
The district court adopted the magistrate judge’s Report and Recommendation in its entirety and dismissed ASWAN’S lawsuit. ASWAN now appeals.
II. Analysis
A. Standard of review
“To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, ‘to state a claim to relief that is plausible on its face.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Edüd 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that “the defendant is liable for the misconduct alleged.” Id. at 1949-50. In other words, the factual allegations (taken as true) must “permit the court to infer more than the mere possibility of misconduct.” Id. at 1950.
Facts pled that are “merely consistent with” liability are not sufficient. Id. at 1949 (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [similarly] do not suffice,” because “we are not bound to accept as true a legal conclusion couched as a factual allegation.” Id. at 1949-50 (internal quotation marks omitted).
In addition, where a conspiracy is alleged, the plaintiff must plead facts amounting to more than “parallel conduct and a bare assertion of conspiracy.... Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.” Twombly, 550 U.S. at 556-57, 127 S.Ct. 1955 (reasoning that allegations of parallel conduct were insufficient to state a claim for a conspiracy under the Sherman Act). The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement. Id. at 557, 127 S.Ct. 1955.
B. Conspiracy claim under § 1985(3)
The first issue on appeal is whether ASWAN’S complaint stated a valid 42 U.S.C. § 1985(3) conspiracy claim. To state such a claim under 42 U.S.C. § 1985(3), a plaintiff must prove the following:
(1) a conspiracy of two or more persons,
(2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.
Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir.1995). Moreover, the plaintiff “must show an agreement or a meeting of the minds by [the] defendants to violate the [plaintiffs] constitutional rights.” Id. at 1377 (internal quotation marks omitted). “[W]e have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.” Id.
ASWAN alleges that a conspiracy has existed since at least 1995 to “segregate ... homeless people and to reduce the visibility of black homeless people and ADA protected people and handicapped homeless people from Richmond’s mainstream, its downtown,” which includes VCU’s main campus and the surrounding majority-white neighborhoods. But on the *347 required element of a conspiracy of two or more persons, the complaint alleges nothing more specific than statements that the “Doe(s) and the City entered into a conspiracy,” that they had a “meeting of the minds that they would act in concert with VCU” to pressure the Daily Planet to relocate to Oliver Hill Way, and that “Homeward was created as part of the conspiracy and ... became part of the conspiracy.”
ASWAN’S claim that the defendants conspired to force homeless people out of downtown Richmond by relocating homeless services to Oliver Hill Way fails because it is comprised almost entirely of conclusory allegations unsupported by concrete facts. For example, the allegations that “Doe(s) and the City entered into a conspiracy” and that “Homeward was created as part of the conspiracy and ... became part of the conspiracy” are “[tjhreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,” and are therefore not sufficient to state a claim. See Iqbal, 129 S.Ct. at 1949-50.
As the magistrate judge found, “ASWAN fails to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made.” The allegations are thus insufficient to support a meeting of the minds by the defendants. At most, ASWAN’S allegations amount to “parallel conduct and a bare assertion of a conspiracy.” See Twombly, 550 U.S. at 556, 127 S.Ct. 1955. This is not enough to survive a motion to dismiss.
C. ADA, § 1983, and equal-protection claims
The next issue is whether ASWAN’S ADA, § 1983, and equal-protection claims are barred by the applicable statute of limitations. Answering this question requires that we first determine the limitations period for each type of claim.
Title II of the ADA does not contain a statute of limitations. Although “Congress enacted a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1; 1990,” Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (citing 28 U.S.C. § 1658), the ADA was enacted on July 26, 1990, see 104 Stat. 327, 327. We therefore borrow the state statute of limitations that applies to the most analogous state-law claim. See 42 U.S.C. § 1988; Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), partially superseded by statute as stated in Jones, 541 U.S. at 377-80,124 S.Ct. 1836.
The district court concluded that Virginia’s one-year limitations period for claims under the Virginia Rights of Persons with Disabilities Act (hereafter, the Virginia Disabilities Act), Va.Code Ann. § 51.5-40 et seq., should apply to the ADA claims here, and the parties do not dispute this conclusion on appeal. See Childress v. Clement, 5 F.Supp.2d -384, 388 (E.D.Va. 1998) (holding that the Virginia Disabilities Act constitutes the most analogous state statute of limitations for claims brought under the ADA).
This court has not previously determined what limitations period governs ADA claims brought in Virginia. But we have held that the Virginia Disabilities Act provides the limitations period for claims brought under the Federal Rehabilitation Act in Virginia because of the similarities between these acts. Wolsky v. Med. Coll, of Hampton Roads, 1 F.3d 222, 225 (4th Cir.1993). And we have held that we apply the same substantive analysis to both the ADA and the Rehabilitation Act “[because the language of the two statutes is substantially the same.” Doe v. Univ. of *348 Maryland Med. Sys. Corp., 50 F.3d 1261, 1264 n. 9 (4th Cir.1995). Moreover, the Virginia Disabilities Act itself expressly acknowledges its close connection to both the Rehabilitation Act and the ADA: “The Virginia Office for Protection and Advocacy shall promulgate such regulations as may be necessary to implement this section. Such regulations shall be consistent, whenever applicable, with regulations imposed under the federal Rehabilitation Act of 1973, as amended, and the federal Americans with Disabilities Act of 1990.” Va.Code Ann. § 51.5-40 (footnotes omitted). We therefore agree with the district court’s conclusion that the one-year limitations period in the Virginia Disabilities Act applies to ADA claims brought in Virginia.
With regard to the § 1983 and equal-protection claims, the statute-of-limitations period for both is two years. Lewis v. Richmond City Police Dept., 947 F.2d 733, 735 (4th Cir.1991) (§ 1983 claims); Al-Amin v. Shear, 325 Fed.Appx. 190, 193 n. 2 (4th Cir.2009) (equal-protection claims). The parties do not dispute this conclusion.
The applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination. Cox v. Stanton, 529 F.2d 47, 50 (4th Cir.1975). A civil rights claim accrues when the plaintiff “knows or has reason to know of the injury which is the basis of the action.” Id. At the very latest, ASWAN knew or should have known of its purported injury stemming from the alleged conspiracy to relocate homeless services from downtown to Oliver Hill Way when the Conrad Center opened on February 5, 2007. So even for the claims with a two-year limitations period, ASWAN’S suit should have been filed no later than February 5, 2009. Because ASWAN’S complaint was not filed until February 17, 2009, those claims are time barred.
ASWAN attempts to avoid this result by claiming that certain acts of the defendants constituted a continuing violation of the ADA. “In general, to establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice.” Nat’l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir.1991) (brackets, ellipses, and internal quotation marks omitted). In other words, if the plaintiff can show that the illegal act did not occur just once, but rather “in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.” Id. at 1167 (internal quotation marks omitted). But continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation. Id. at 1166.
ASWAN claims that the following actions constitute a continuing violation of the ADA: (1) VCU’s withdrawal of its promise to help pay the cost of transporting homeless people to and from the Conrad Center, which withdrawal was allegedly made in retaliation for ASWAN’S filing the present lawsuit; (2) the attempt by VCU and Homeward in 2009 to persuade various organizations to relocate feeding programs from Monroe Park to the Conrad Center; and (3) the City’s communication to homeless people in 2009 that they would need to travel to the Conrad Center to sign up for the downtown overnight shelter.
The first action does not establish a continuing violation because it is an allegation of an entirely new violation — a retaliation claim instead of a discrimination claim. See id. at 1167 (concluding that a continuing violation requires that “the same alleged violation was committed at the time of each act” (internal quotation *349 marks omitted)). And the second and third actions essentially deal with decisions to add new services for the homeless at the Conrad Center. The fact that the Conrad Center is still located on Oliver Hill Way and continues to offer services to the homeless — including new services that are added from time to time — does not amount to a continuing violation, but rather amounts to the continuing effect of the original decision to locate the Conrad Center on Oliver Hill Way. See Jersey Heights Neighborhood Ass’n v. Glendening, 174 F.3d 180, 189 (4th Cir.1999) (“At bottom, appellants’ continuing violation argument rests on the alleged ongoing effects of the original decision to locate the highway in proximity to Jersey Heights.”) ASWAN’S ADA, § 1983, and equal-protection claims are therefore time barred.
D. FHA claims
We will now address whether the district court erred in dismissing ASWAN’S FHA claims. The district court determined that ASWAN’S FHA claims, which have a two-year statute of limitations, see 42 U.S.C. § 3613(a)(1)(A), were also time barred because ASWAN filed suit more than two years after the opening of the Conrad Center.
ASWAN responds by arguing that the accrual date for its FHA claims is not the opening of the Conrad Center in February 2007, but rather when the Center first offered intake services to the homeless that allowed them to sign up for the overnight shelter that continued to be located downtown. This took place in April 2007. ASWAN alleges that the relocation of the intake services violated the FHA. by running afoul of the statutory sections that prohibit discrimination in the provision of housing services. See 42 U.S.C. § 3604(b), (f)(2). Similarly, ASWAN contends that the FHA was violated by the City’s communication to homeless people in 2009 that they would need to travel to the Conrad Center to sign up for the downtown overnight shelter using the intake services.
There are two problems with ASWAN’S argument. One is that the time gap between the opening of the Conrad Center and the actions complained of is not material because ASWAN knew or should have known that intake services were going to be shifted there from the very conception of the Center. In other words, the relocation of intake services is simply another continuing effect of the original decision to locate the Conrad Center on Oliver Hill Way. Indeed, ASWAN admits as much by arguing in its own brief that if the defendants had not conspired to establish the Conrad Center on Oliver Hill Way, then “there would have been no Conrad Center on Oliver Hill Way to receive relocation of the [intake services] and the City’s processing of applications for access to overflow shelter downtown on very cold nights.”
The other problem with ASWAN’S argument is that the intake services to sign up for overnight shelter do not constitute “services” within the meaning of the FHA. As explained by this court in Jersey Heights:
The Fair Housing Act’s services provision simply requires that “such things as garbage collection and other services of the kind usually provided by municipalities” not be denied on a discriminatory basis. [Mackey v. Nationwide Ins. Cos., 724 F.2d 419, 424 (4th Cir.1984).] It does not extend to every activity having any conceivable effect on neighborhood residents. See id. (hazard insurance is not a “service”); Clifton Terrace Assocs., Ltd. v. United Techs. Corp., 929 F.2d 714, 720 (D.C.Cir.1991) (elevator manufacturer is not a provider of “services”); Southend Neighborhood Improvement Ass’n [v. St. Clair County, 743 F.2d 1207, 1210 (7th Cir.1984)] *350 (maintenance of county-owned neighborhood property is not a “service”); Laramore v. Illinois Sports Facilities Auth., 722 F.Supp. 443, 452 (N.D.Ill.1989) (stadium site selection is not the provision of a “service”). “To say that every discriminatory municipal policy is prohibited by the Fair Housing Act would be to expand that Act to a civil rights statute of general applicability rather than one dealing with the specific problems of fair housing opportunities.” Clifton Terrace Assocs., 929 F.2d at 720 (quoting Vercher v. Harrisburg Housing Auth., 454 F.Supp. 423, 424 (M.D.Pa.1978)).
Although Jersey Heights dealt with the meaning of “services” in 42 U.S.C. § 3604(b), the term has the same meaning in § 3604(f)(2) because the relevant language is materially the same. Compare 42 U.S.C. § 3604(b) with 42 U.S.C. § 3604(f)(2); see also Smith v. Pac. Prop, and Dev. Corp., 358 F.3d 1097, 1103 (9th Cir.2004) (concluding that the language of § 3604(f)(2), which governs discrimination based on handicap, is otherwise materially identical to § 3604(b), which governs discrimination based on race, color, religion, sex, familial status, or national origin).
Intake services to sign up for a homeless shelter are simply not within the type of services covered by the FHA because they are unlike “services generally provided by governmental units such as police and fire protection or garbage collection.” See Southend, 743 F.2d at 1210. Indeed, in the present case, the intake services are provided by Catholic Charities, a nonprofit organization, and not by any governmental unit. Because the intake services in question do not fall within the ambit of the FHA, ASWAN’S FHA claims are barred by the two-year statute of limitations and, more fundamentally, they fail to state a claim upon which relief can be granted.
E. Retaliation claim under the ADA
The final issue on appeal is whether the district court erred in dismissing ASWAN’S ADA retaliation claim against VCU. ASWAN contends that VCU retaliated against ASWAN by retracting VCU’s earlier promise to help pay the cost of transporting homeless people to and from the Conrad Center.
The ADA’s retaliation provision provides, in relevant part, that “[n]o person shall discriminate against any individual because such individual ... made a charge ... under this Chapter.” 42 U.S.C. § 12203(a). To establish a prima facie retaliation claim under the ADA, plaintiffs must allege (1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3) that a causal link exists between the protected conduct and the adverse action. Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir.2001). ASWAN argues that it satisfies this test because (1) its ADA claims against VCU in this lawsuit constitute protected conduct, (2) VCU’s withdrawal of its earlier promise to help pay the cost of transporting homeless people constitutes an adverse action against ASWAN and its members, and (3) the reason for VCU’s reversal was to retaliate against ASWAN for bringing this lawsuit.
As ASWAN admits, however, VCU was under no obligation to help pay the cost of transporting homeless people to and from the Conrad Center. And retracting a gratuitous promise does not amount to a discriminatory act or an adverse action. See Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482-84 (4th Cir.1996) (en banc) (holding that the employer’s revocation of gratuitous healthcare benefits did not violate ERISA’s anti-retaliation provision). Although Stiltner involves ERISA’s anti-retaliation provision (29 U.S.C. § 1140), that provision and the ADA’s retaliation *351 provision (42 U.S.C. § 12203(a)) use the identical phrase — “discriminate against”— to describe what constitutes an adverse action, and Stiltner expressly held that revoking a gratuitous benefit does not fit within this language. Id.
Because VCU’s alleged promise to help pay the cost of transporting homeless people to and from the Conrad Center is gratuitous, VCU’s retraction of this promise does not amount to an adverse action. We therefore conclude that the district court properly dismissed ASWAN’S ADA retaliation claim against VCU.
III. Conclusion
For all of the reason set forth above, we affirm the judgment of the district court.

AFFIRMED