**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1028**

_____

ELEANOR MCGINN,

              Plaintiff - Appellant,

     v.

BROADMEAD, INC,

              Defendant - Appellee.

------------------------------

NATIONAL CELIAC ASSOCIATION; DISABILITY LAW CENTER OF VIRGINIA; AARP; AARP FOUNDATION,

              Amici Supporting Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:23−cv−02609−SAG)

_____

Argued:  October 22, 2025                                        Decided:  February 18, 2026

_____

Before DIAZ, Chief Judge, and GREGORY and BENJAMIN, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded.  Chief Judge Diaz wrote the opinion, in which Judge Gregory and Judge Benjamin joined.

_____

**ARGUED:**  David John Hommel Jr., EISENBERG & BAUM, LLP, New York, New York, for Appellant.  P. Thomas DiStanislao, WHITEFORD, TAYLOR & PRESTON

L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:** Andrew Rozynski, EISENBERG & BAUM, LLP, New York, New York, for Appellant. Samuel P. Morse, WHITEFORD, TAYLOR & PRESTON L.L.P., Baltimore, Maryland, for Appellee. Ellen M. Saideman, LAW OFFICE OF ELLEN SAIDEMAN, Barrington, Rhode Island; Theodore R. Debonis, Steven C. Schwartz, Alicia Yeo, CHAFFETZ LINDSEY LLP, New York, New York, for Amici National Celiac Association and disAbility Law Center of Virginia. William Alvarado Rivera, Kelly Bagby, Mary William, Genevieve Fontan, AARP FOUNDATION, Washington, D.C., for Amici AARP and AARP Foundation.

---

2

DIAZ, Chief Judge:

Eleanor McGinn has celiac disease and must keep a gluten free diet. On several occasions, she fell ill after eating meals at her retirement community, Broadmead, Inc. So she sued, alleging that Broadmead exposed her to gluten and discriminated against her.

The district court granted summary judgment to Broadmead. McGinn now appeals the adverse judgment on her state-law breach of contract and negligence claims, as well as three federal-law claims.

Finding that genuine questions of material fact remain about McGinn's alleged gluten exposure in January 2021, we vacate the district court's grant of summary judgment to Broadmead on the breach of contract and negligence claims arising from that incident. But we otherwise affirm.

I.

A.

McGinn has celiac disease and can't eat gluten. After Broadmead assured her that it could accommodate her diet, she signed a residential agreement. That contract specified that Broadmead would serve "three nutritional and properly cooked meals a day from a choice of well-balanced menus." Joint Appendix (J.A.) 187.

1.

McGinn moved to Broadmead in October 2017. On February 22, 2018, McGinn vomited after eating a crab cake that a Broadmead employee said was gluten free. She informed a Broadmead manager and asked whether the crab cake contained imitation

3

crabmeat, which had gluten. The manager responded that Broadmead "only use[d] real crab meat." J.A. 477. McGinn "let it go" and didn't make any further inquiries. J.A. 422. She later stated that "[i]n hindsight, I wish I had said, [t]ell me exactly how you made it." J.A. 422.

On June 20, 2020, McGinn ate what she thought was a gluten free stuffed tomato. She "developed severe bloating and pain in [her] stomach followed by vomiting, diarrhea, exhaustion and hives on [her] hands and leg." J.A. 291, 430.

She informed Broadmead's Chief Executive Officer about the incident. The Chief Executive Officer responded, confirming that "there was a transcription error" on the menu and that the stuffed tomato contained gluten. J.A. 290.

Then, on January 29, 2021, McGinn ate chicken marsala labeled as gluten free and "became violently ill." J.A. 442. She reported the incident to Broadmead's Vice President of Health Services, stating, "[t]here is no way that chicken was gluten free because I NEVER vomit unless I consume gluten." J.A. 592–94.

Another Broadmead administrator instructed the dining director "to determine how this process failed." J.A. 597. The next day, the administrator told McGinn that she had spoken to the dining director and concluded: "[s]omewhere along the line there was a failure and we will find it." J.A. 595.

2.

McGinn notified the dining director about her "observations, concerns and suggestions regarding gluten free food at Broadmead" in January 2019. J.A. 497–500. She

4

expressed concern about "a serious lack of communication and consistency in presenting 'gluten free' selections." J.A. 497.

In February 2021, a Broadmead administrator invited McGinn to a meeting "to review our [meal preparation] process and determine if there are other measures we can put into place." J.A. 595. At that meeting, a Broadmead chef said he used Rice Krispies as crab cake filler. McGinn responded that Rice Krispies aren't gluten free, which, in her view, explained why she had gotten sick after eating the crab cake in 2018.

But the chef only used Rice Krispies in crab cakes for one week in January 2021, before switching to gluten free bread crumbs. A different chef made the crab cake in 2018, and he also used gluten free bread crumbs.

The administrator later emailed McGinn, stating that Broadmead's crab cake recipe calls for "only gluten free breadcrumbs." J.A. 598. She told McGinn that Broadmead "changed out [its] rice flour bin and . . . also moved the location of the bin so there isn't a possibility of any cross contamination." J.A. 598.

3.

McGinn stopped eating at Broadmead's dining venues around February 2021.

In March 2023, Broadmead offered to let McGinn "opt out of [her] Residence and Care Agreement meal plan" and to apply a credit to her account. J.A. 285. McGinn didn't accept. She continued using her meal plan to request gluten free food, which she gave away.

5

In May 2023, Broadmead's Chief Executive Officer invited McGinn to "provide a list of gluten free bread products, desserts, and pasta dishes that [she] would like to see available in the Broadmead dining venues." J.A. 287–88. McGinn did so.

Broadmead also had several staff members complete a "gluten free certification program." J.A. 528–47. Additionally, it created a separate, gluten free kitchen space and expanded its gluten free food offerings. McGinn's expert stated that Broadmead "made the right remedies" and is "now in a different position and a place in accommodating [her] needs." J.A. 737–38.

## B.

McGinn sued Broadmead on September 26, 2023, alleging violations of the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Act. She also asserted six state-law claims: breach of contract, negligence, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.

McGinn moved for a preliminary injunction, which the district court denied. *McGinn v. Broadmead, Inc.*, 1:23-cv-02609-SAG, ECF Nos. 7, 19. She then moved for partial summary judgment on her three federal claims, and Broadmead moved for summary judgment on all nine claims. *McGinn*, 1:23-cv-02609-SAG, ECF Nos. 38–39. The court denied McGinn's motion and granted Broadmead's. *McGinn*, 1:23-cv-02609-SAG, ECF No. 54.

McGinn appeals the district court's order, but only as to her three federal-law claims and her state-law breach of contract and negligence claims.

6

II.

We first assess whether McGinn has standing to seek injunctive relief under the Americans with Disabilities Act.

To have standing, a plaintiff must show an injury in fact, which is "(a) concrete and particularized, and (b) actual or imminent." *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). When seeking injunctive relief, "the plaintiff must also show a 'real or immediate threat that [she] will be wronged again.'" *Id.* (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). "The party invoking federal jurisdiction bears the burden of establishing standing–and, at the summary judgment stage, such a party can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (citation modified).

McGinn contends that she has standing because she "repeatedly became sick after eating purportedly gluten-free meals prepared by [Broadmead and elsewhere]." Appellant's Br. at 29 (citation modified). But past injury alone isn't enough to show McGinn "will be wronged again" and doesn't confer standing to enjoin a speculative future injury. *Lyons*, 461 U.S. at 111.

McGinn also claims that she has standing because she faces continuing harm. Why? Because Broadmead's policies deter her from eating at its facilities and inflict economic harm.

7

Neither injury establishes standing here. McGinn misreads our cases when she asserts that deterrence alone is sufficient for standing. *See* Appellant's Br. at 32 (citing *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447 (4th Cir. 2017) and *Daniels v. Arcade, L.P.*, 477 F. App'x 125 (4th Cir. 2012)). To be sure, we've allowed an Americans with Disabilities Act plaintiff to demonstrate the likelihood of future injury by alleging past injury and a plausible intention to return for the service. *See Nanni*, 878 F.3d at 455–56; *Daniels*, 477 F. App'x at 130. But we decided those appeals at the motion to dismiss stage.

At summary judgment, it's not enough for McGinn to claim that she "obviously has a plausible intent" to resume eating at Broadmead. Reply Br. at 6. She must proffer facts and evidence. *See Clapper*, 568 U.S. at 411–12. But she hasn't pointed to anything to show she would ever eat again at Broadmead. Just the opposite: even after Broadmead implemented the changes McGinn requested, she still refused to eat there.

Nor has McGinn suffered economic harm. Six months before she sued, Broadmead agreed to let her opt out of its meal plan. McGinn declined and continued to order and receive gluten free meals that she gave away.

Because McGinn lacks standing, we can't review her Americans with Disabilities Act claim for injunctive relief.

### III.

### A.

Next, we turn to Broadmead's argument that McGinn forfeited review of her Fair Housing Act and Rehabilitation Act claims.

8

When a litigant doesn't "present any argument in its opening brief taking issue with [a] facet of the district court's holding," we will "conclude that it has [forfeited] any challenge to the district court's judgment on that ground, and we will affirm." *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 120 (4th Cir. 2021).

In her opening brief, McGinn addressed only the first part of the district court's reasoning that her federal claims accrued in January 2019 and so were untimely. She didn't address the court's holding that the continuing violation doctrine, which tolls the limitation period for new violations, doesn't apply for failure to accommodate claims outside the hostile workplace context. *See* J.A. 818 (citing *Szedlock v. Tenet*, 61 F. App'x 88, 93 (4th Cir. 2003)). Because McGinn didn't address the court's alternate ground for dismissing her Fair Housing Act and Rehabilitation Act claims, she has forfeited the challenge.

## B.

In any event, the statute of limitations bars McGinn's federal claims.

## 1.

Fair Housing Act claims have a two-year limitations period, *see* 42 U.S.C. § 3613(a)(1)(A), and because the Rehabilitation Act doesn't specify, we apply Maryland's general three-year limitations rule, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2025).

We review a district court's statute of limitations decision de novo. *See Chambers v. N.C. Dep't of Just.*, 66 F.4th 139, 141 (4th Cir. 2023). "A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (citation

9

modified).  But, under the continuing violation doctrine, if a plaintiff "can show that the illegal act did not occur just once, but rather in a series of separate acts, and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation." *Id.* (citation modified).

## 2.

McGinn contends that the district court erred in holding that her federal claims accrued in January 2019 when she first informed Broadmead of its alleged failure to accommodate her disability.  She says that her communications with Broadmead in March 2023 constituted a new violation, which restarted the limitations period.

That's not right.  The unpublished case that McGinn cites, *Hill v. Hampstead Lester Morton Ct. Partners LP*, holds that "a plaintiff who renews a request for a previously denied accommodation may bring suit based on a new discrete act of discrimination if the defendant again denies the request."  581 F. App'x 178, 181 (4th Cir. 2014) (citation modified).

But Broadmead didn't deny McGinn's request.  When McGinn asked for more gluten free options in March 2023, Broadmead assured her that its "Dining and Hospitality team continually identifies new products for all diet types and integrates them into [its] dining program." J.A. 285.  Broadmead's Chief Executive Officer also invited McGinn to provide a list of gluten free options she'd like Broadmead to offer, and McGinn sent her a list.  There's no evidence of a new violation.

10

Because McGinn's claims accrued in January 2019, the limitations periods for the Fair Housing Act and the Rehabilitation Act ended in January 2021 and January 2022, respectively. She didn't file suit until September 2023, which was too late for either claim.

IV.

We turn next to McGinn's contention that Maryland's discovery rule saves her breach of contract and negligence claims premised on an alleged gluten exposure from a crab cake in February 2018.

A.

Generally, Maryland applies a three-year limitations period for civil claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2025). But the discovery rule provides an exception. It protects plaintiffs "where it was not reasonably possible to have obtained notice of the nature and cause of an injury," and it tolls the limitations period "until the time the plaintiff discovers, or through the exercise of diligence, should have discovered, the injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000).

Maryland courts apply a two-part test to determine whether the exception applies. First, they ask whether the claimant had the "actual knowledge necessary to cause an ordinarily diligent plaintiff to make an inquiry or investigation." *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 964 (D. Md. 2019) (citation modified). Second, they assess whether "a reasonably diligent inquiry would have disclosed whether there is a causal connection between the inquiry and the wrongdoing." *Id.* Whether "a party is on inquiry

11

is not always a question of fact, and not always a question for the jury." *Est. of Adams v. Cont'l Ins. Co.*, 161 A.3d 70, 91 (Md. Ct. Spec. App. 2017).

B.

McGinn asserts that the district court erred in determining that the limitations period barred her breach of contract and negligence claims arising from the alleged gluten exposure in 2018. McGinn thinks the court should have applied the discovery rule because "she did not know—and could not have known—until [February] 2021" that Broadmead used gluten containing Rice Krispies as a filler in its crab cakes. Appellant's Br. at 46; J.A. 46.

But McGinn doesn't satisfy the conditions to invoke the discovery rule. After McGinn became ill, she contacted Broadmead staff to ask whether the crab cake she'd consumed contained imitation crabmeat. Broadmead confirmed that it didn't, and she "let it go" without making any further inquiries. J.A. 422. McGinn later conceded that she wished she had asked how Broadmead prepared the crab cake but didn't. So McGinn had actual knowledge of both the need to inquire and that her limited inquiry wasn't reasonably diligent.

Because McGinn's alleged gluten exposure occurred in February 2018, the three-year limitations period ran in February 2021. She didn't file suit until September 2023, so her breach of contract and negligence claims arising from that incident are barred by the statute of limitations.

12

C.

In any event, McGinn can't prevail on those claims because the evidence that she suggests creates a dispute of a material fact is speculative. *See United States v. 8.929 Acres of Land*, 36 F.4th 240, 252 (4th Cir. 2022) ("[T]he nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." (citation modified)).

McGinn contends that because Broadmead's chef told her that he used gluten containing Rice Krispies to make a crab cake in 2021, Broadmead must have done the same in 2018. But the evidence doesn't support that conclusion. The chef who prepared the crab cake in 2021 used Rice Krispies for "[p]robably no longer than a week" before switching to a gluten free alternative, and the other chef who made the crab cake in 2018 used gluten free bread crumbs. J.A. 373, 677.

McGinn identifies no contradictory evidence and so her claims fail on the merits.

V.

Lastly, we assess whether the district court erred by granting summary judgment to Broadmead on McGinn's breach of contract and negligence claims from an alleged gluten exposure after she ate chicken marsala in January 2021. We agree with McGinn that it did.

McGinn contends that the district court so erred because it didn't consider all the evidence. She emphasizes that the court didn't account for the Broadmead administrator's statements that 1) she instructed the dining director "to determine how this process failed,"

13

J.A. 597, and 2) "[s]omewhere along the line there was a failure and we will find it," J.A. 595.

McGinn is right that the district court overlooked the administrator's statements when concluding that McGinn did "not adduce[] sufficient non-speculative evidence to show that this amounted to a breach [of contract]" or "a duty of care." J.A. 827, 829. The statements acknowledging a failure are sufficient to create a genuine issue of material fact.

A jury may well find that the statements are admissions of wrongdoing. Or a jury may find that they are mere promises that Broadmead would investigate the matter, without accepting responsibility. But that's for a jury to decide and weigh alongside the other evidence.

\* \* \*

In sum, we vacate the district court's grant of summary judgment for Broadmead on McGinn's breach of contract and negligence claims arising from the alleged gluten exposure in January 2021. We remand for further proceedings on those claims. We otherwise affirm.

*AFFIRMED IN PART,*
*VACATED IN PART, AND REMANDED*

14