**Gary ADLER, Plaintiff,**

v.

**AMERICAN HOME MORTGAGE SERVICING, INC.,**
Defendant.

**Civil Case No. 12–cv–00291–LTB–MEH.**

United States District Court,
D. Colorado.

June 28, 2012.

Order Denying Reconsideration
Sept. 5, 2012.

Jay Toivo Jambeck, Leigh Law Group, San Francisco, CA, for Plaintiff.

Jamie Grant Siler, Maris S. Davies, Bloom Murr Accomazzo & Siler, P.C., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This matter is before me on two motions by American Home Mortgage Servicing, Inc. ("American"). The first is its Motion to Dismiss Plaintiff Gary Adler's original complaint [**Doc # 7**]. The second is its Motion to Dismiss Adler's Amended Complaint [**Doc # 24**]. Jurisdiction is proper under 28 U.S.C. § 1331. After considering the parties' arguments, and for the reasons herein, I DENY the first motion as moot and GRANT the second.

### I. Background

This case concerns alleged discrimination in connection with the servicing of a residential mortgage. Adler alleges the following in his amended complaint:

Adler is a Colorado citizen who is visually impaired. He was declared legally blind in 1993 and is considered handicapped under pertinent law. American is a Delaware corporation with its principal place of business in Irving, Texas. American, through its participation in certain federal

programs, received federal funding for making loan modifications.

In February 2003, Adler purchased a home in Castle Rock, Colorado, taking out a mortgage for $279,903 to do so. Six years later, in 2009, his mortgage was sold to American for servicing.

In or around 2009, Adler requested that American issue all its correspondence to him in 24–point bold font due to his visual impairment. This accommodation was necessary for Adler to read the documents American would send regarding his mortgage. American refused and continued issuing all its correspondence to him in its standard type. Because he could not read the correspondence, Adler says he did not understand his rights and duties and was injured as a result.

That same year, Adler resubmitted his request to American in connection with his applications for a mortgage modification pursuant to the Home Affordable Modification Program ("HAMP"), a program enacted under the Emergency Economic Stabilization Act of 2008 and made part of the Making Home Affordable Program, enacted by the Financial Stability Act of 2009. American again refused. As a result, Adler says he could not read the materials pertaining to his HAMP applications, although he did submit multiple applications. His applications were ultimately denied. Similarly, due to its typeface, font, and colors, Adler also says he could not read American's website to access forms and other information regarding his mortgage. In 2011, Adler's home was foreclosed.

Feeling aggrieved, Adler commenced this action on February 3, 2011, bringing claims under the Fair Housing Act (the "FHA"), 42 U.S.C. § 3601 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181 *et seq.* American then filed its first motion to dismiss Adler's original complaint. *See* Docket # 7. In response, Adler moved for leave to file an amended complaint pursuant to Fed.R.Civ.P. 15(a). *See* Pl.'s Mot. Docket # 17. I granted Adler's motion and accepted his first amended complaint tendered therewith. *See* Docket # 18. Consequently, I deny American's first motion as moot. American now moves pursuant to Fed. R. Civ. P 12(b)(6) to dismiss the first amended complaint.

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Plausibility" in this context "refer[s] to the scope of allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008) (internal quotations omitted). As a corollary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. When deciding a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint and draw all reason-

able inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir.2007). Legal conclusions, however, do not receive this treatment. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

## III. Discussion

American's second motion asserts that each of Adler's three causes of action fails to state a plausible claim for which relief can be granted. I address his claims *seriatim.*

### A. The FHA Claim

■ Adler's first claim is that American violated the FHA by failing to send its correspondence to him in the larger, bolded typeface he requested. Adler's complaint does not specify a particular FHA provision upon which his first claim rests, but his response elucidates that the claim rests upon § 3604(f)(2). *See* Pl.'s Resp. Docket # 25 at 8 ("Plaintiff is not complaining of a real estate transaction as contemplated by § 3605 ... but of a service provided in connection with his dwelling.... The actual servicing of loans does not fall under the ambit of § 3605 but rather § 3604."). I therefore cabin my analysis to whether Adler states a claim under that provision.

Section 3604(f)(2) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in ... that dwelling after it is so sold...." American contends that Adler fails to state a claim because § 3604 does not cover mortgage servicing and because the alleged discrimination was not in connection with the purchase of Adler's home. Adler disagrees. He argues that mortgaging servicing is a "service" within the meaning of § 3604 and that discrimination need not

relate to the sale of his home, but rather, to his home in general. Hence, I must address these two issues, beginning with whether American was providing a "service" under § 3604. For the reasons below, I conclude that Adler fails to sufficiently allege that American was providing him a service as contemplated by § 3604(f)(2). I therefore need not and do not decide whether the provision of services must be "in connection with" the purchase of Adler's home or with his home in general.

Adler fails to establish that by the statute's plain language, "services" includes mortgage servicing. He does not even attempt to do so, for good reason. The statute does not define "services," and the provision's drafting leaves the term ambiguous. *See N.A.A.C.P. v. American Family Mut. Ins. Co.,* 978 F.2d 287, 298 (7th Cir. 1992); *see also* 42 U.S.C. § 3604. Nor does the term "loan" or "mortgage" appear in § 3604. *See* 42 U.S.C. § 3604.

Compare this to the next section: Section 3605 makes it "unlawful for any person or other entity *whose business includes engaging in residential real estate-related transactions* to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of ... handicap." 42 U.S.C. § 3605(a) (emphasis added). "Residential real estate transactions" means "[t]he making or purchasing of loans or providing other financial assistance—(A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate." *Id.* § 3605(b)(1).

The regulations promulgated by the Department of Housing and Urban Development ("HUD") to effectuate the FHA mirror this contrast and apparent allocation of coverage. *Compare* 24 C.F.R. §§ 100.50–

.90, .200–205 (providing HUD's interpretation of conduct that is unlawful housing discrimination under § 3604 and not mentioning mortgage loans), *with* 24 C.F.R. §§ 100.110–.148 (providing HUD's interpretation of the conduct that is unlawful housing discrimination under § 3605, and making numerous explicit references to loans and mortgages). "HUD's views about the meaning of the FHA are entitled to 'great weight.'" *Bloch v. Frischholz,* 587 F.3d 771, 781 (7th Cir.2009) (quoting *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972)). Furthermore, § 100.70(b) and (d) indicates that HUD interprets "services" in § 3604 to mean municipal services and property and hazard insurance for dwellings. *See* 24 C.F.R. § 100.70(b), (d).

While the Tenth Circuit has not addressed whether § 3604 covers claims of discrimination in mortgage matters, some courts have held that the plain language of §§ 3604 and 3605 and their corresponding regulations shows that such a claim must be brought under § 3605. *See, e.g., Webster Bank v. Oakley,* 265 Conn. 539, 830 A.2d 139, 151–52, 155 (2003) ("[W]e conclude that the defendant's claims of discrimination in the enforcement of mortgage loan agreements unambiguously falls within the ambit of 42 U.S.C. § 3605 . . . . Indeed, we conclude further that the specific applicability of § 3605 to the context of enforcement of mortgage loan agreements precludes the application of § 3604 in the same arena. . . . Thus, this interpretive treatment by [HUD] . . . confirms that 42 U.S.C. § 3605 is the sole FHAA provision applicable to mortgage servicing and enforcement. We, therefore, disagree with the defendant's claim that mortgage servicing and enforcement "otherwise make[s] unavailable or den[ies]" a dwelling or is a "[service]" in connection with a dwelling for purposes of 42 U.S.C. § 3604(f)(1) and (2)."); *Gaona v. Town &*

*Country Credit,* 324 F.3d 1050, 1057 n. 7 (8th Cir.2003) (noting that § 3604 "bars discrimination in sales and rentals, rather than loans"); *Eva v. Midwest Nat'l Mortgage Bank, Inc.,* 143 F.Supp.2d 862, 886 (N.D.Ohio 2001) ("§ 3604 relates to acquiring a home, while § 3605 applies to the making or purchasing of loans or providing other financial assistance for maintaining a dwelling previously acquired."); *but see Clifton Terrace Associates, Ltd. v. United Technologies Corp., et al.,* 929 F.2d 714 (D.C.Cir.1991); *Beard v. Worldwide Mortgage Corp.,* 354 F.Supp.2d 789, 809 (W.D.Tenn.2005); *Nat'l Cmty. Reinvestment Coal. v. Novastar Fin., Inc.,* 2008 WL 977351, *2–3 (D.D.C. March 31, 2008) (unpublished); *and Jones v. Office of Comptroller of Currency,* 983 F.Supp. 197 (D.D.C.1997).

To be clear, I do not decide whether claims of discrimination in mortgage matters must be brought under § 3605 or whether that section also covers mortgage servicing. The discussion above simply shows how Adler fails to demonstrate that mortgage servicing is a "service" under the plain language of the statute he cites as the basis for his claim, § 3604, or its corresponding regulations.

Adler also fails to provide any case law construing "services" in § 3604 to include mortgage servicing—nor is the Court aware of any. Instead, he attempts to persuade me to strike new ground and conclude that "services" encompasses or should encompass mortgage servicing. To do so, Adler cites cases in which mortgage financing or refinancing was deemed a "service." He then conclusorily asserts that it follows from these cases that mortgage servicing should be as well. For numerous reasons, this is unavailing. The cases he cites are not controlling. *See Clifton Terrace,* 929 F.2d 714; *Beard,* 354 F.Supp.2d 789; *Nat'l Cmty.,* 2008 WL

977351, *2–3; *and Jones,* 983 F.Supp. 197. They are also factually distinguishable because of the patent and important differences between servicing and financing a mortgage, distinctions to which the cases themselves allude. Moreover, as expounded *infra,* these cases inherently limit their holdings to financing and refinancing, rendering Adler's attempt to broaden them to include servicing untenable.

Adler cites *Clifton Terrace,* 929 F.2d 714, for its dicta that mortgage financing is an "essential service." 929 F.2d at 720. Context helps understand why Adler's reliance is misplaced:

> Clifton notes that the Department of Housing and Urban Development ("HUD") has recently promulgated regulations that interpret [§§ 3604(a) and (f)(1)] to prohibit "any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons." 24 C.F.R. § 100.70(b) (1990). This proscription includes "[r]efusing to provide municipal services or property or hazard insurance for dwellings or providing such services or insurance" discriminatorily. *Id.* § 100.70(d)(4). Although the denial of certain essential services relating to a dwelling, such as mortgage financing, sewer hookups, zoning approval, or basic utilities, might result in the denial of housing, this interpretation by HUD does not extend the reach of 804(a) and (f)(1) to questions of habitability.
>
> On the other hand, the pertinent clauses in subsections (b) and (f)(2), which do address habitability, are limited to services and facilities provided in connection with the sale or rental of housing. 42 U.S.C. § 3604(b), (f)(2). These subsections are directed at those who provide housing and then discriminate in the provision of attendant services or facilities, or those who otherwise control the provision of housing services and facilities.

*Id.* This quote shows that when the court referred to mortgage financing as an "essential service," it was in the context of § 3604(a) and (f)(1), not § 3604(f)(2), and it explicitly stated that its characterization does not extend to questions of habitability, the province of § 3604. Whether the court in *Clifton Terrace* considers mortgage financing a service under § 3604(f)(2) is thus opaque. Additionally, its discussion of § 3604(f)(2) corrodes Adler's argument that American was providing a service because Adler does not allege that American provided his housing or that it monopolizes the provision of mortgage servicing. *See id.* Absent both of those, according to *Clifton Terrace,* § 3604(f)(2) does not apply. For these reasons, the court determined that an elevator manufacturer was not a provider of "services" under § 3604. *Id.*

Adler anchoring his argument to *Beard,* 354 F.Supp.2d 789, also proves unsound. There, the court concluded that § 3604's "services" was broad enough to encompass home improvement loans and refinancing loans "because the burden of the debt affects individuals ability to buy or sell a dwelling." *Id.* at 809. Here, American bought and serviced Adler's mortgage six years after Adler took out his mortgage and purchased his home. Adler does not allege how the simple act of American servicing his mortgage affected his ability to buy or sell a dwelling when he had already incurred the "burden" wrought by the mortgage six years before.

*National Community,* 2008 WL 977351, *2–3, is no different. The court there indeed held that § 3604 applies to mortgage financing because discrimination in lending can making housing unavailable— that is, inaccessible—and one of the purposes of the FHA is to "discourage dis-

crimination in access to housing." *See id.* Adler, however, does not allege how American's mortgage servicing denied him access to housing.

Lastly, *Jones*, 983 F.Supp. 197, also undermines Adler's ultimate argument. After citing a litany of cases "fairly liberl[ly] interpreting the reach of [s]ection 3604," the court stated that "[i]n [them], however, the entity sued for alleged discrimination was an actor directly involved in providing housing or providing services, like homeowner's insurance or financing, *that are directly connected to helping people acquire housing.*" *Id.* at 202. Adler does not allege that American helped him acquire his home.

Additionally, I note that other circuits have construed "services" in such a way so as to exclude mortgage matters altogether. For example, the Fourth Circuit has repeatedly held that "services" as it is used in the FHA "encompasses such things as garbage collection and other services of the kind usually provided by municipalities ...." *Mackey v. Nationwide Ins. Companies,* 724 F.2d 419, 424 (4th Cir.1984) (concluding that hazard insurance is not a "service"); *accord A Society Without A Name v. Virginia,* 655 F.3d 342, 349–50 (4th Cir. 2011) ("Intake services to sign up for a homeless shelter are simply not within the type of services covered by the FHA because they are unlike services generally provided by governmental units such as police and fire protection or garbage collection.") (internal quotations omitted); *Jersey Heights Neighborhood Ass'n v. Glendening,* 174 F.3d 180, 193 (4th Cir. 1999) (a proposed roadway is not a "service"). It has further stated that the "FHA's services provision ... does not extent to every activity having a conceivable effect on neighborhood residents." *Jersey Heights,* 174 F.3d at 193. The Seventh Circuit has reached a similar conclusion, holding that "services" as used in

§ 3604 "applies to services generally provided by governmental units such as police and fire protection or garbage collection." *Southend Neighborhood Imp. Ass'n v. St. Clair Cnty.,* 743 F.2d 1207, 1210 (7th Cir. 1984) (maintenance of county-owned neighborhood property is not a "service"); *see also Laramore v. Illinois Sports Facilities Auth.,* 722 F.Supp. 443, 452 (N.D.Ill.1989) (stadium site selection is not the provision of a "service"). And although most of these courts dealt with the meaning of "services" in the context of 42 U.S.C. § 3604(b), "the term has the same meaning in § 3604(f)(2) because the relevant language is materially the same." *Virginia,* 655 F.3d at 350; compare 42 U.S.C. § 3604(b) with 42 U.S.C. § 3604(f)(2); *see also Smith v. Pac. Prop. and Dev. Corp.,* 358 F.3d 1097, 1103 (9th Cir.2004) (concluding that the language of § 3604(f)(2), which governs discrimination based on handicap, is otherwise materially identical to § 3604(b), which governs discrimination based on race, color, religion, sex, familial status, or national origin). Again, it also appears that HUD interprets "services" to mean municipal services and property and hazard insurance. *See* 24 C.F.R. § 100.70(b), (d).

In sum, Adler does not provide any legal authority supporting his contention that servicing a mortgage originated by another party is a "service" under § 3604(f)(2). Adler would nevertheless have me conclude that the term includes this activity. Absent supporting authority, and in light of the law militating against that conclusion, I decline. Adler therefore fails to state a claim under § 3604(f)(2). Accordingly, I grant this portion of American's second motion.

## B. *The Rehabilitation Act Claim*

■ Adler's second claim is that American violated Section 504 of the Rehabilita-

tion Act by failing to modify its correspondence to him regarding the HAMP program pursuant to this request. He alleges that this denied him equal access to information related to HAMP.

■ Section 504 of the Rehabilitation Act provides the following:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). To establish a prima facie claim under § 504, Adler must demonstrate that "(1) [he] is handicapped under the Act; (2) [he] is otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against [him]." *Barber v. Colorado,* 562 F.3d 1222, 1228 (10th Cir.2009). American contends that Adler has not sufficiently pled the second and fourth elements of the prima facie case.

I turn to the face of Adler's amended complaint and look for allegations that he was qualified for HAMP. HAMP has eligibility requirements, and even an eligible mortgage is not automatically entitled to modification under the program. *See, e.g., Boyd v. U.S. Bank,* 787 F.Supp.2d 747, 753 (N.D.Ill.2011) ("Defendants are correct that HAMP does not automatically entitle eligible borrowers to loan modifications."), *Hart v. Countrywide Home Loans, Inc.,* 735 F.Supp.2d 741, 747 (E.D.Mich.2010) ("[E]ven if the Court assumes that Plaintiff's mortgage was eligible for modification under [HAMP], Plaintiff's claims fail because Plaintiff misconstrues [HAMP]. [HAMP] do[es] not impose a duty on Defendant to modify every eligible mortgage

and thus, even if Plaintiff had been eligible for loan modification, her claims still fail."). Even though this by itself would not be enough, the complaint fails to generally allege that he was qualified for HAMP. *See.* Compl., Docket # 19; *see also Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 ("A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted). More importantly, assuming, *arguendo,* it did so allege, the complaint is nevertheless bereft of the necessary further factual enhancement in support thereof. *See* Compl., Docket # 19; *see also Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Thus, Adler fails to make a prima facie claim under § 504. Because I conclude that Adler does not sufficiently allege the second element of the prima facie case, I need not address the fourth element. Accordingly, I grant this portion of American's second motion.

### C. The ADA Claim

Adler's third claim is that American discriminated against him in violation of the ADA by denying him full and equal enjoyment of its website because of the site's font, style, colors and scheme. In response to the motion, Adler concedes that he does not state a cause of action under the ADA. Accordingly, I grant this portion of American's second motion.

### IV. Conclusion

For the foregoing reasons, IT IS ORDERED that Defendant American's Motion to Dismiss [**Doc # 7**] is DENIED as moot, and its Motion to Dismiss Amended Complaint [**Doc # 24**] is GRANTED.

### ORDER

This matter is before me on Plaintiff Gary Adler's Motion to Amend the Judgment in this Matter to Allow for Leave to File a Second Amended Complaint and to

Reconsider the Court's Order Dismissing the Action [**Doc # 29**]. After considering the parties' arguments, for the reasons below, I DENY the motion.

## I. Background

This motion arises from Adler's discrimination action against Defendant American Home Mortgage Servicing, Inc. ("American"). Adler alleged that he was legally blind and, as a result, that he could not read American's correspondence, documents, and website. American was servicing Adler's mortgage, which it had bought from the original mortgagor. Adler repeatedly asked American to issue all correspondence and documents to him in 24–point bold font and to alter its website so he could read and access materials pertaining to his mortgage. American refused. Feeling aggrieved, Adler brought claims under the Fair Housing Act (the "FHA"), 42 U.S.C. § 3604(f)(2), Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181 *et seq.*

American filed a motion to dismiss Adler's original complaint. *See* Docket # 7. Adler moved for leave to file an amended complaint pursuant to Fed. R.Civ.P. 15(a). *See* Pl.'s Mot. Docket # 17. I granted Adler's motion and accepted his first amended complaint. *See* Docket ## 18, 19. American then filed its motion to dismiss the first amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). *See* Docket # 24. On June 27, 2012, I issued an order granting that motion (the "Order"). Docket # 27. Judgment was entered in American's favor on July 5, 2012. *See* Docket # 28.

Adler now moves pursuant to Fed. R.Civ.P. 15 and 59(e). He seeks an amendment of the judgment allowing him leave to amend his first amended complaint and reconsideration of the Order—specifically and only my determination that he did not state a claim under Section 504.

## II. Law

■ Rule 15(a) provides that a party may its pleadings once as a matter of course at any time before a responsible pleading is served. *Glenn v. First Nat'l Bank in Grand Junction,* 868 F.2d 368, 370 (10th Cir.1989). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). A court should freely grant leave "when justice so requires." *Id.* "[T]his presumption," however, "is reversed in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed." *The Tool Box, Inc. v. Ogden City Corp.* 419 F.3d 1084, 1087 (internal quotations omitted). The Tenth Circuit has "repeatedly and unequivocally held that, once judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R.Civ.P. 59(e)." *Id.; accord Seymour v. Thornton,* 79 F.3d 980, 987 (10th Cir.1996); *see also Combs v. PricewaterhouseCoopers LLP,* 382 F.3d 1196, 1205 (10th Cir.2004); *U.S. v. Nelson,* 465 F.3d 1145, 1148 (10th Cir.2006).

■ Rule 59(e) allows a litigant subject to an adverse judgment by a trial court to seek reconsideration of that judgment by filing a motion to amend or alter the judgment. *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991). A motion to alter or amend must be filed within 28 days after the judgment is entered. *See* Fed.R.Civ.P. 59(e). Three major grounds justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *See Servants of the*

*Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir.2000).

### III. Discussion

In his motion, Adler argues that relief per Rule 59(e) is appropriate on two grounds. The first is the availability of new evidence. The second is the need to correct clear error. I address these arguments in turn and conclude that Adler fails to show that relief under 59(e) is warranted.

### A

■ Adler first argues that "in reviewing [American's] web site in connection with the Motion to Dismiss the [first amended complaint], [he] discovered that [American] also receives federal funding from federal entities Fannie Mae and Freddie Mac, and such facts were not known at the time the [first amended complaint] was filed." Pl.'s Mot. at 3. This information, Adler urges, "raised the issue, factually, that [American] receives federal funding from those sources and thus may be liable under Section 504." *Id.* He argues that refusing to amend the judgment to grant him leave to add this information to the first amended complaint will result in manifest injustice.

This argument fails for multiple reasons. Adler fails to establish that this information is "new" or was otherwise unavailable. I need not look further than Adler's motion: Adler discovered this information "in reviewing [American's] web site in connection with the Motion to Dismiss the [first amended complaint]." Pl.'s Mot. at 3. He thus had this information before the Order was issued and judgment was entered. Adler also fails to demonstrate how this information was "unavailable," as it appears from the briefs that it was on American's publicly accessible web site. Adler therefore does not show that amending the judgment is justified on grounds of the availability of new evidence. *See The Tool*

*Box,* 419 F.3d at 1087 ("Courts have refused to allow a postjudgment amendment when the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave.").

Nor does he establish that manifest injustice will result from a refusal to amend the Order. If this information was available and known to Adler prior to the Order and judgment, it is unclear from where "manifest injustice" derives if he is not allowed to add that information to his first amended complaint now. Furthermore, Adler already alleged in his first amended complaint that American receives federal funding, an allegation necessary to state claim under Section 504. Pl.'s First Am. Compl. at ¶¶ 13, 25; *Barber v. Colorado,* 562 F.3d 1222, 1228 (10th Cir.2009). That claim was not dismissed for failing to sufficiently allege that American receives federal funding. *See* Docket # 27 at 1243–44. Not only, then, does the complaint's extant allegation of federal funding vitiate the alleged "newness" of the Fannie Mae and Freddie Mac information, it also shows that its absence did not and would not harm Adler in the way required for "manifest injustice."

### B

■ Adler secondly argues that the Order should be altered to correct clear legal error regarding the dismissal of his Section 504 claim. That claim alleged that by failing to modify its correspondence to him regarding the federal Home Affordable Modification Program ("HAMP"), American violated Section 504 of the Rehabilitation Act. Citing *Barber, supra,* I first stated that "[t]o establish a prima facie claim under Section 504, Adler must demonstrate that "(1) [he] is handicapped under the Act; (2) [he] is otherwise qualified to participate in the program; (3) the pro-

gram receives federal financial assistance; and (4) the program discriminates against [him]." " *See* Docket # 27 at 1244. American challenged whether Adler had sufficiently pled the second element, and I determined the following:

HAMP has eligibility requirements, and even an eligible mortgage is not automatically entitled to modification under the program. *See, e.g., Boyd v. U.S. Bank,* 787 F.Supp.2d 747, 753 (N.D.Ill. 2011) ("Defendants are correct that HAMP does not automatically entitle eligible borrowers to loan modifications."), *Hart v. Countrywide Home Loans, Inc.,* 735 F.Supp.2d 741, 747 (E.D.Mich.2010) ("[E]ven if the Court assumes that Plaintiff's mortgage was eligible for modification under [HAMP], Plaintiff's claims fail because Plaintiff misconstrues [HAMP]. [HAMP] do[es] not impose a duty on Defendant to modify every eligible mortgage and thus, even if Plaintiff had been eligible for loan modification, her claims still fail."). Even though this by itself would not be enough, the complaint fails to generally allege that he was qualified for HAMP. *See.* Compl., Docket # 19; *see also Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 ("A pleading that offers labels and conclusion or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted). More importantly, assuming, *arguendo,* it did so allege, the complaint is nevertheless bereft of the necessary further factual enhancement in support thereof. *See* Compl., Docket # 19; *see also Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Thus, Adler fails to make a prima facie claim under § 504.

*Id.* Here, Adler does not challenge the four elements of a prima facie Section 504 claim. He instead argues that my construction of "otherwise qualified" is clear legal error. His position is that to show he was "otherwise qualified," he only had to allege was that he had a mortgage

serviced by American, not that he met HAMP's requirements. Pl.'s Mot. at 5. From this he argues that American was required to accommodate him in accessing and applying to HAMP.

I disagree. In the first instance, Adler fails to cite a single legal authority in support of his construction of "otherwise qualified" in this context. *See* Pl.'s Mot. at 4–6. And while he instead attempts to analogize HAMP to ADA and Section 504 prescriptions in employment applications, he still fails to cite any authority supporting that importation.

Additionally, Supreme Court precedent strongly suggests that my construction of "otherwise qualified" is not clearly legally erroneous. In *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), a plaintiff with a major hearing disability sought admission to a college to be trained as a registered nurse, but she was not capable of safely performing as a nurse even with full-time supervision. The Court concluded that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Id.* at 406, 99 S.Ct. 2361 (affirming district court's ruling that an "[o]therwise qualified, can only be read to mean otherwise able to function sufficiently in the position sought in spite of the handicap, if proper training and facilities are suitable and available."). In *Davis,* the "program" was the specific nursing program to which the plaintiff had applied, not to the community college as a whole. *See, e.g., id.* at 405, 99 S.Ct. 2361 ("Section 504 by its terms does not compel educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in *their programs* to allow disabled persons to participate.").

In *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), Med-

icaid recipients challenged the State of Tennessee's proposal to reduce the number of annual days of inpatient hospital care covered by its Medicaid program as violating Section 504. The Court's review was whether such claim was cognizable. *Id.* at 289, 105 S.Ct. 712. *Alexander* reaffirmed *Davis*'s construction of "otherwise qualified" as meaning that the plaintiff must meet the requirements for the specific program or benefit sought: "*[A]n otherwise qualified handicapped individual* must be provided with meaningful access to the benefit that the grantee offers. The benefit itself, of course, cannot be defined in a way that effectively denies *otherwise qualified handicapped individuals* the meaningful access to which they are entitled. . . ." *Id.* at 301, 8 Soc.Sec.Rep.Serv. 6 (emphases added); *see also id.* at 300 n. 19, 105 S.Ct. 712 ("[T]he ultimate question is the extent to which a grantee is required to make reasonable modifications in its programs for the needs of the handicapped.").

Adler's contention that all that was necessary for him to be "otherwise qualified" was to allege that he had a mortgage serviced by American flies in the face of both cases. In *Davis,* simply being an applicant or prospective applicant to the community college was not enough; rather, the plaintiff had to show that she met all of the college's nursing program's requirements. *See* 442 U.S. 397, 99 S.Ct. 2361. Likewise, in *Alexander,* a plaintiff was not "otherwise qualified" just because he was a Tennessee resident; he had to show that he was in fact eligible for the Medicaid benefits at issue. *See* 469 U.S. 287, 105 S.Ct. 712. HAMP has certain baseline eligibility beyond just having a mortgage, and even an eligible mortgage was not entitled to modification under the program. *See, e.g., Boyd,* 787 F.Supp.2d at 753; *Hart,* 735 F.Supp.2d at 747. Adler was thus not "otherwise qualified" merely because he had a mortgage serviced by American—the grantee-entity offering the program at issue. He must have instead sufficiently alleged that he met HAMP's requirements. *See Davis,* 442 U.S. 397, 99 S.Ct. 2361; *Alexander,* 469 U.S. 287, 105 S.Ct. 712. That was what I concluded in the Order. And Adler did not so allege. Moreover, those cases concluded that Section 504 mandates that access to certain benefits and programs be provided to those *who actually meet that program or benefit's requirements.* Because Adler did not allege he met HAMP's requirements, his argument that American was required to accommodate his request so as to access and apply to the program fails.

Consequently, Adler fails to establish that relief under 59(e) is justified.

## IV. Conclusion

For the foregoing reasons, IT IS ORDERED that Adler's Motion to Amend the Judgment in this Matter to Allow for Leave to File a Second Amended Complaint and to Reconsider the Court's Order Dismissing the Action [**Doc # 29**] is DENIED.